# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MIKE DENTON, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. 13-CV-709-TCK-TLW |
| | ) |
| DAN YANCEY, individually and in | ) |
| his official capacity; | ) |
| RODNEY RAY, individually and in | ) |
| his official capacity; and | ) |
| CITY OF OWASSO, OKLAHOMA, | ) |
| a municipal corporation, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Before the Court are Defendants' Motion for Summary Judgment and Brief in Support (Doc. 40) and Plaintiff's Motion to Strike Portions of Defendants' Reply in Support of Summary Judgment (Doc. 49).

**I.    Background**

Plaintiff Mike Denton, a police officer for the City of Owasso, Oklahoma ("City") filed this action against the City; the police chief, Dan Yancey ("Yancey"); and the city manager, Rodney Ray ("Ray") asserting claims under 42 U.S.C. §§ 1983 and 1981. Specifically, Plaintiff alleges three claims: (1) First Amendment retaliation claim based on his speech; (2) First Amendment retaliation claim based on his right of association; and (3) Fourteenth Amendment due process claim.

**A.    The Incident**

For purposes of summary judgment, the following facts are either undisputed or taken in a light most favorable to Plaintiff. Plaintiff has been employed by the City as a police officer since February 1994. On June 30, 2011, Plaintiff and fellow officers Jonathan Foyil ("Foyil") and H.D.

Pitt ("Pitt") were involved in the arrest of Bryan Spradlin ("Spradlin") (the "Incident"). While Plaintiff and Foyil were escorting Spradlin into the police station, Spradlin allowed his body to go limp, causing Spradlin to fall forward. Foyil and Plaintiff stumbled forward over Spradlin. Video footage shows Plaintiff step on Spradlin's head before the officers picked Spradlin up off the ground. Once inside the station, video footage shows Plaintiff lifting Spradlin's handcuffed arms up and over the back of his head and purposefully striking Spradlin in the face three times with the back of his arm while escorting Spradlin through a sally-port. During the shift, Foyil told Pitt – who was also Foyil's supervisor – that he was concerned about Plaintiff's strikes to Spradlin's face. Pitt shared Foyil's concerns with Plaintiff, and Pitt and Plaintiff discussed the Incident. Plaintiff told Pitt he struck Spradlin in the face because he thought Spradlin was about to spit on him.

### B. The Investigation

On July 26, 2011, Officer Foyil sent an e-mail to Pitt regarding the Incident indicating that "by policy, [he] was required to notify [his] immediate supervisor" and wanted to "have a trail that [he] fulfilled his responsibilities by informing" his supervisor. (Ex. 8 to Defs.' Mot. for Summ. J.) Pitt forwarded the e-mail to Captain Tracy Anderson, who forwarded the e-mail to Yancey. Upon receiving the e-mail, Yancey reviewed the video footage and initiated an investigation into the Incident to determine whether Plaintiff's actions violated the City's Use of Force and Weapons policy.

Yancey engaged an independent investigator, Captain Greg Sipes of the Broken Arrow Police Department, to investigate the Incident. On September 21, 2011, Captain Sipes issued a written report concluding that "some or all of the force applied in this incident could be ruled excessive." (Ex. 11 to Defs.' Mot. for Summ. J.) On October 3, 2011, Yancey signed a City of

2

Owasso Proposed Disciplinary Action Notice, recommending Plaintiff's termination. A variety of interim disciplinary hearings were held before Ray approved a City of Owasso Disciplinary Action Approval, recommending Plaintiff's termination, on November 4, 2011.

### C. The Arbitration

Plaintiff and Owasso Fraternal Order of Police Lodge 149 ("Union") subsequently filed a grievance, claiming there was no just cause for Plaintiff's termination. An arbitration hearing was held in March 2012, and the arbitrator issued his award on June 20, 2012. The arbitrator ultimately concluded that "a preponderance of the evidence does establish that [Plaintiff's] misconduct during the transport of [Spradlin] was unnecessary and unreasonable, but was not excessive force within the meaning of existing case law. OPD's action of termination shall be voided and discipline will be reduced to a written reprimand." (Ex. 18 to Defs.' Mot. for Summ. J. at 20.) The City later appealed the arbitration decision in the District Court of Tulsa County. The trial court vacated the arbitration award as contrary to public policy, but such ruling was ultimately reversed by the Oklahoma Court of Civil Appeals. Therefore, the arbitrator's decision was ultimately upheld on appeal, and Plaintiff remains employed as a police officer by the City today.

### D. Release of Video Footage

In December 2011, the Tulsa World filed suit against the City in the District Court of Tulsa County to obtain video of the Incident, after the City refused to provide the footage pursuant to the Oklahoma Open Records Act. The City defended the lawsuit until July 10, 2012, but then voluntarily produced the video to the Tulsa World. Plaintiff alleges the release of the video footage coincided with the arbitration award in Plaintiff's favor and was a retaliatory act by the City. Defendants argue that the video was released at that time because the arbitration had concluded, the

3

City had obtained a release of liability from Spradlin, and it became apparent that the video footage qualified as an open record to which the Tulsa World was entitled.

**II.     Standard of Review**

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that no genuine issue of material fact exists. *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006). The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. *Id.* However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party seeking to overcome a motion for summary judgment must also make a showing sufficient to establish the existence of those elements essential to that party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-33 (1986).

**III.    Plaintiff's Motion to Strike**

Plaintiff filed a Motion to Strike Portions of Defendants' Reply in Support of Summary Judgment (Doc. 49), requesting the Court strike the portions of Defendants' reply addressing new allegations of excessive force against Plaintiff that arose earlier this year. Defendants did not respond to Plaintiff's motion. The Court finds the new allegations to be wholly irrelevant to the claims raised by Plaintiff in this proceeding, and Plaintiff's Motion to Strike (Doc. 49) is granted.

## IV. Defendants' Motion for Summary Judgment

### A. First Amendment Retaliation - Speech

Plaintiff alleges Defendants retaliated against him for his speech at the arbitration when the City released the video footage of the Incident to the Tulsa World. The Supreme Court has long recognized that "the government's interest in regulating the speech of its employees differs significantly from its interest in regulating the speech of the public in general." *Deschenie v. Bd. of Educ.,* 473 F.3d 1271, 1276 (10th Cir. 2007). When a citizen accepts public employment, "'the citizen by necessity must accept certain limitations on his or her freedom.'" *Brammer–Hoelter v. Twin Peaks Charter Acad.,* 492 F.3d 1192, 1202 (10th Cir. 2007) (quoting *Garcetti v. Ceballos,* 547 U.S. 410, 418 (2006)). When faced with a First Amendment claim by a public employee, "courts must balance the First Amendment interests of that employee, speaking as a concerned citizen, with the government's interests in promoting the efficiency of the public services it performs through its employees." *Eisenhour v. Weber Cnty.,* 744 F.3d 1220, 1227 (10th Cir. 2014). To balance these interests, courts utilize a five-part test based on the Supreme Court cases of *Garcetti* and *Pickering v. Board of Education,* 391 U.S. 563 (1968). *See Brammer-Hoelter*, 492 F.3d at 1202-03. Under the *Garcetti/Pickering* test, a First Amendment retaliation claim has five elements:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Cypert v. Ind. Sch. Dist No. 1-050 of Osage Cnty.*, 661 F.3d 477 (10th Cir. 2011). "The first three steps are to be resolved by the district court, while the last two are ordinarily for the trier of fact."

*Brammer-Hoelter*, 492 F.3d at 1202-03. For purposes of this Opinion and Order only, the Court assumes Plaintiff can satisfy the first three elements of the *Garcetti/Pickering* analysis and proceeds to the fourth element.

### 1. Speech at Issue

Prior to addressing the fourth element, some discussion of the speech underlying Plaintiff's claim is necessary. In his Complaint, Plaintiff alleges only that "[a] substantial and motivating factor in Defendants' retaliation against Plaintiff were statements he made that were protected by the First Amendment Right of Free Speech." (Compl. ¶ 28.) As a result, some ambiguity exists regarding the exact nature of such speech. In their motion, Defendants cite six instances of speech which they believe underlie Plaintiff's retaliation claim. However, in his response, Plaintiff unequivocally indicates that his sworn testimony at the arbitration is the only speech at issue. (Pl.'s Resp. to Defs.' Mot. for Summ. J. at 28.) Accordingly, the Court has only considered Plaintiff's testimony at the arbitration in analyzing Plaintiff's retaliation claim.

### 2. Substantial or Motivating Factor

The fourth element of the *Garcetti/Pickering* test requires Plaintiff to prove that his protected speech was a substantial or motivating factor in the alleged adverse employment decision.

#### a. Adverse Employment Decision

The "adverse employment decision" concept requires some initial discussion. The "adverse employment decision" standard in the context of a First Amendment retaliation claim is less strenuous than that in the Title VII context. *Baca v. Sklar*, 398 F.3d 1210, 1220-21(10th Cir. 2005). As examples, the Tenth Circuit has found the following employment decisions could constitute impermissible retaliation: (1) removal of job duties, (2) a job reprimand, (3) a poor performance

evaluation, and (4) an involuntary transfer to another facility. *See Schuler v. City of Boulder*, 189 F.3d 1304, 1310 (10th Cir. 1999). Additionally, the Tenth Circuit has held that "actions short of an actual or constructive employment decision can in circumstances violate the First Amendment." *Morfin v. Albuquerque Pub. Sch.*, 906 F.2d 1434, 1437 n.3 (10th Cir. 1990) (implying plaintiffs could pursue a First Amendment retaliation claim where they allegedly were subjected to "substantial harassment and abuse.")

Plaintiff has never clearly indicated which adverse employment decision underlies his retaliation claims. In his response to Defendants' motion, Plaintiff appears to allege two instances of retaliation: (1) the investigation into the Incident and Plaintiff's subsequent termination; and (2) the release of the video to the media following the arbitration. Because Plaintiff has limited the speech at issue to his speech at the arbitration – which was *after* the investigation into the Incident and Plaintiff's termination – the release of the video to the media is the only possible adverse employment decision.[1]

### b. Causation

"Although causation is normally a question of fact to be decided by the jury, a plaintiff opposing summary judgment must show that there is 'evidence (either of a direct or indirect nature) from which a reasonable jury could find the required causal link between the protected disclosures . . . and the allegedly retaliatory actions.'" *Payne v. D.C.*, 741 F. Supp. 2d 196, 219 (D.D.C. 2010) (quoting *Williams v. Johnson*, 701 F. Supp. 2d 1, 17 (D.D.C. 2010)). In his response to Defendants' motion, Plaintiff argues "Defendants had the clear option of putting this matter behind them for all

---

[1] For purposes of this Opinion and Order, the Court assumes release of the video footage could constitute an adverse employment action.

involved . . . . The Defendants chose not to do that, but rather chose to release videos to the public that were highly embarrassing to the Plaintiff." (Pl.'s Resp. to Defs.' Mot. for Summ. J. at 29.) This is the only "evidence" Plaintiff offers of a causal link between his testimony at the arbitration and the release of the video.

To prevail on his First Amendment retaliation claim, Plaintiff must provide some evidence of a connection between his speech and the adverse action. "Mere speculation fails to create a genuine issue of material fact to avoid summary judgment." *Id.* at 220; *see also Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (affirming summary judgment for defendant on plaintiff's retaliation claim where claim rested on logical fallacy of *post hoc, ergo propter hoc,* i.e. "after this, therefore because of this"). Plaintiff simply has not offered any evidence. Nothing in the record indicates that Plaintiff's testimony at the arbitration was a substantial or motivating factor in the release of the video. Instead, the evidence available suggests that the conclusion of the arbitration and the pending lawsuit against the City motivated the release of the video, not Plaintiff's speech. At the time the video was released, the arbitration had concluded and Plaintiff's counsel had released a copy of the arbitration award – which thoroughly described the events depicted in the video – to the Tulsa World.

Based on the evidence provided, no reasonable jury could find that Plaintiff's speech at the arbitration was a substantial or motivating factor in prompting the release of the arrest video. Accordingly, Defendants are entitled to summary judgment on Plaintiff's First Amendment retaliation claim based on his speech, and the Court need not reach the question of whether Defendants Yancey and Ray are entitled to qualified immunity.

## B. First Amendment Retaliation - Association

"The First Amendment protects the right of a public employee to join and participate in a labor union." *Morfin*, 906 F.2d at 1438. "Although 'an employer is free to communicate to his employees any of his general views about unionism or any of his specific views about a particular union,' the employer may not retaliate against an employee for engaging in union activity . . . ." *Cillo v. City of Greenwood Vill.*, 739 F.3d 451 (10th Cir. 2013) (quoting *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 618 (1969)). The *Garcetti/Pickering* analysis also applies to First Amendment claims for retaliation based on association. However, the Tenth Circuit has held that "[i]n the specific context of public employee labor unions, this Court has rejected the requirement that a worker demonstrate that his association with the union be a matter of public concern." *Shrum v. City of Coweta*, 449 F.3d 1132, 1138 (10th Cir. 2006). The Tenth Circuit also found that courts need not balance the government's interests against the employee's interests in union association where a collective bargaining agreement has been signed. *Id.* at 1139 ("Where a public employer has negotiated with an employee union and signed a collective-bargaining agreement, it has contractually agreed to the legitimacy of the union and its employees' association with the union. The public employer has presumably received the benefit of the bargain . . . .") Accordingly, in the context of a retaliation claim based on association, a plaintiff need only satisfy the first, fourth, and fifth prongs of the *Garcetti/Pickering* test. *See supra* Part II.A.

Plaintiff alleges he was an active participant in the Union prior to his termination. (Pl.'s Resp. to Defs.' Mot. for Summ. J. 20.) Specifically, Plaintiff cites a July 7, 2011 e-mail he sent in which he urged the union members not to ratify the collective bargaining agreement proposed by the City and "did not hesitate to criticize City management's position." (*Id.* at 23.) Plaintiff

9

contends – but fails to cite any evidence – that Yancey admitted to seeing the e-mail. Plaintiff argues Yancey subsequently retaliated against Plaintiff by investigating the Incident and, ultimately, recommending Plaintiff's termination. Plaintiff alleges he was subjected to further retaliation when Defendants released the video to the Tulsa World.

Defendants claim that even if Plaintiff's union association is protected by the First Amendment, Plaintiff has failed to provide specific evidence that his association with the union was a substantial or motivating factor in the adverse employment action taken against him.

### 1. Substantial or Motivating Factor

As noted above, Plaintiff must provide evidence of a causal link between his association with the union and the adverse employment action. Mere speculation or conjecture by Plaintiff alone will not suffice. *See Payne v. D.C.*, 741 F. Supp. 2d 196, 219-20 (D.D.C. 2010). Although Plaintiff has alleged general union involvement, he offers only one specific incident to support his involvement – the July 7, 2011 e-mail. Even assuming Yancey saw the e-mail, Plaintiff has not offered any evidence that the July 7, 2011 e-mail motivated any adverse employment action.

No reasonable jury could find a causal link between Plaintiff's Union activity and any of the potential adverse employment actions (investigation into the Incident, Plaintiff's termination, and release of the video). *See Bourgeault v. Pueblo Cnty., Colo.*, No. 11-CV-01792-RPM, 2013 WL 2468314, at *4 (D. Colo. June 7, 2013) (granting summary judgment on First Amendment association claim where plaintiff supported her claim with only evidence of her union membership, attendance at a "protest meeting," and two stray union-related comments); *Morris v. City of McAlester*, No. CIV-10-200-FHS, 2011 WL 4036161, at *2-3 (E.D. Okla. Sept. 12, 2011) (finding

10

genuine issue of material fact as to causation where plaintiff, who served as president and vice-president of union, alleged specific controversial activities taken in those roles).

Without articulating it in such terms, Plaintiff also argues that disparate treatment of officers alleged to have used excessive force evidences retaliation. "When an employer disciplines an employee who has engaged in protected activity more harshly than it treats similarly situated employees who commit comparable or more serious offense, an inference of improper motive may be drawn." *Cillo*, 739 F.3d at 462. However, in comparing treatment of employees, the court's job is not to "second guess" whether the employer's decision was "ultimately correct or wise. Rather, we ask whether there is 'some evidence of impermissible motives' – in this case, retaliation for Union activity." *Id.*

Plaintiff relies on an incident from 2007, known as the "Bassuco incident" as evidence of disparate treatment by the City. According to Plaintiff, the officers involved in the Bassuco incident used greater force than Plaintiff used in the Incident, yet none of those officers were terminated. The parties disagree as to the true nature of the Bassuco incident. Plaintiff claims the Bassuco incident involved allegations of excessive force by officers, while Defendants claim the real concern was the "un-cuffing [of] a controlled prisoner, who then attacked the officers." (Defs.' Reply at 8.) During his deposition, Yancey testified regarding the nature of the Bassuco incident:

> That particular case was a situation where they had uncuffed a prisoner that had been secured after pepper-spraying him, taking him outside, lost control of him. He got aggressive with the officers. And they had at that point, in my opinion, had the right to use force. . . . So the conduct in that particular situation would have been uncuffing the – or the misconduct would have been uncuffing the individual.

(Dep. of D. Yancey, Ex. 9 to Pl.'s Response, 12:22-13:8.) Plaintiff has not offered any evidence which suggests the nature of the Bassuco incident was anything other than as Yancey testified. No

11

evidence of an excessive force investigation following the Bassuco incident has been provided. However, even if the Court construes the Bassuco incident in a light most favorable to Plaintiff, the Court does not find treatment of the officers involved in the Bassuco incident to evidence any impermissible motive by Defendants. Specifically, Plaintiff has not indicated whether the officers involved in the Bassuco incident were also involved in union activities. Such fact is key when comparing the Bassuco incident to the subject Incident. If the Bassuco officers were also involved in union activities, the Bassuco incident cannot possibly give rise to any inference of an improper motive by Defendants.

Based on the evidence provided, no reasonable jury could find that Plaintiff's Union involvement was a substantial or motivating factor in the investigation into the Incident, Plaintiff's termination, or the release of the arrest video. Accordingly, Defendants are entitled to summary judgment on Plaintiff's First Amendment retaliation claim based on his association. The Court need not reach the question of whether Defendants Yancey and Ray are entitled to qualified immunity.

### C. Fourteenth Amendment - Due Process

In his response, Plaintiff concedes his Fourteenth Amendment due process claim, and Defendants are entitled to judgment on such claim.

### V. Conclusion

Plaintiff's Motion to Strike Portions of Defendants' Reply in Support of Summary Judgment (Doc. 49) is GRANTED. Defendants' Motion for Summary Judgment and Brief in Support (Doc. 40) is GRANTED.

**SO ORDERED** this 23rd day of October, 2015.

**TERENCE C. KERN**
**UNITED STATES DISTRICT JUDGE**